UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JULIO CESAR GARCIA-ESPINOZA,
a/k/a Juliie Garcia,

      Defendant.

———————————————/

Case No. 1:25-cr-101

Hon. Paul L. Maloney
United States District Judge

**DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT
OF MOTION FOR DOWNWARD VARIANCE**

Mr. Garcia-Espinoza acknowledges he violated immigration laws and assaulted officers during his arrest. He takes full responsibility for his actions. But his offenses do not tell his whole story. And when considering all of the relevant sentencing factors, Mr. Garcia-Espinoza believes a sentence below his guideline range is sufficient, but not greater than necessary.

**Relevant Procedural History**

In October 2025, a Superseding Indictment charged Mr. Garcia-Espinoza with three counts. *See* ECF No. 23, PageID.119 (Superseding Indictment). Count 1 charged him with False Claim of Lawful Permanent Resident Status; Count 2 charged him with Misuse of a Social Security Account Number; and Count 3 charged him with Assaulting, Resisting, or Impeding Federal Officers. *See id.* Without the benefit of a plea agreement, Mr. Garcia-Espinoza appeared before

United States Magistrate Judge Phillip Green and sought to plead guilty to the Superseding Indictment. *See* ECF No. 35, PageID.141 (Minute Sheet). Magistrate Judge Green issued a Report and Recommendation that this Court accept his plea, which this Court adopted. *See* ECF No. 36, PageID.142 (Report and Recommendation); ECF No. 38, PageID.145 (Order Adopting Report and Recommendation). This Court set Mr. Garcia-Espinoza's sentencing hearing for April 13, 2026. *See* ECF No. 37, PageID.144.

### Section 3553(a) factors

This Court must consider the sentencing factors outlined in 18 U.S.C. § 3553(a). In doing so, this Court must mind its "overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary'" to achieve the sentencing goals set forth under § 3553(a)(2). *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting 18 U.S.C. § 3553(a)). A sentence below Mr. Garcia-Espinoza's guideline range will achieve these goals.

Mr. Garcia-Espinoza first acknowledges his wrongdoing and accepts responsibility for his actions. He understands he violated this country's immigration laws by falsely claiming to be a lawful permanent resident and by using a fake social security number. He also acknowledges biting a federal officer, kicking, yelling, and resisting arrest. He apologizes for his actions and has consistently accepted responsibility by timely pleading guilty, cooperating throughout the presentence interview process, and posing no issues while in custody at the Newaygo County Jail. *See* ECF No. 42, Page 5, ¶ 7 (PSR).

Standing before this Court is a hardworking individual who has never been in trouble with the law beyond two traffic-related violations. *See id.*, Page 10, ¶¶ 61-62. Mr. Garcia-Espinoza's work ethic is quite impressive: Mr. Garcia-Espinoza worked long hours—on average 72 hours—at a dairy farm for roughly three years. *See id.,* Page 14, ¶ 86. This constant dedication is nearly double the standard work week in this country and is physically demanding work. Mr. Garcia-Espinoza cared for the cows in all weather conditions and for long stretches of time. Relatedly, Mr. Garcia-Espinoza started working when he was roughly 14 years old because he wanted to help his dad in the fields. *See id.* ¶¶ 83, 85.

An investigator with counsel's office interviewed Mr. Garcia-Espinoza's supervisor as well as one of his co-workers, who Mr. Garcia-Espinoza describes as his "American friend." Both individuals had very positive things to say about him.[1] The PSR highlights his supervisor's comments, but defense counsel would like to take this opportunity to provide additional statements that his other co-worker had to say. Mr. Garcia-Espinoza's co-worker indicated he had known Mr. Garcia-Espinoza for roughly two and a half years. The co-worker indicated that Mr. Garcia-Espinoza was "a great kid," "always had a great attitude," "always smiling, joking around," and "a great worker." Attachment B, at 2:40. Echoing the supervisor's observations, the co-worker stated that "there was nothing on the farm that [Mr. Garcia-Espinoza] wouldn't do." *Id.* at 2:45.

---

[1]Mr. Garcia-Espinoza is attaching both recordings for the court's review.

While Mr. Garcia-Espinoza recognizes he illegally worked because he did not have authorization, it is certainly relevant for this Court to consider his overall character of routinely showing up and doing tough, manual labor day in and day out.

With respect to the assaultive behavior, Mr. Garcia-Espinoza in no way diminishes his actions or seeks to excuse his behavior.  He apologizes to the officer that he bit.

But Mr. Garcia-Espinoza's personal experience helps contextualize why he responded the way he did. At the moment Mr. Garcia-Espinoza was confronted by ICE officers, Mr. Garcia-Espinoza panicked. At least initially, he was confused about whether the ICE officers were in fact officers, as they were in plain clothing and drove unmarked cars.[2] ECF No. 42, Page 6, ¶ 15. While an officer identified themselves as "policia," and explained he was being arrested, another officer had already grabbed Mr. Garcia-Espinoza's arm by that point and so he had limited time to reflect or process what was happening in that moment.

In Mexico, Mr. Garcia-Espinoza witnessed a group of eight individuals chase after and ultimately kidnap two individuals right off the street in the middle of the day. He remembers hearing the two individuals scream at the top of their lungs. Unfortunately, what Mr. Garcia-Espinoza witnessed is consistent with

[2]Mr. Garcia-Espinoza's co-worker indicated to defense counsel's investigator that he (the co-worker) interacted with the officers and didn't realize the officers were law enforcement until the officers told the co-worker they had warrants. *See* Attachment B at 8:25-8:35.

4

what he knew about the issues of kidnapping too. Various people had told him stories of people being kidnapped.

The data and broader societal trends in Mexico back up his observations and the information he had heard about kidnappings. Many reports have demonstrated that Mexico, as well the city of Guadalajara and the state of Jalisco specifically,[3] are all plagued with kidnappings and missing persons. For example, the United Nationals released a report in May 2022, detailing the "phenomenon of disappearances in Mexico." United Nations, Committee on Enforced Disappearances, May 18, 2022 (accessible at https://docs.un.org/en/CED/C/MEX/VR/1(Findings)). The UN Report noted that Mexico's National Registry of Missing and Disappeared Persons had data[4] showing that the number of registered missing persons as of November 2021 was 95,121. *See id.* at 3. Similarly, the University of Minnesota's Human Rights Program through the College of Liberal Arts has an entire page discussing Jalisco, Mexico. *See* Jalisco, College of Liberal Arts Human Rights Program, https://cla.umn.edu/human-rights/engagement/press-reporting-disappearances-mexico/jalisco (last accessed March 23, 2026). This page discusses the "systematic disappearances" in Jalisco—between the years 2009 and 2018, the state of Jalisco "had a total of 7,376 disappeared or missing persons." *Id.* Since 2018, the circumstances only worsened—in between

---

[3]Guadalajara is the capital of Jalisco, a state of Mexico.
[4]Mexico's National Registry of Disappeared and Missing Persons can be access at https://versionpublicarnpdno.segob.gob.mx/Dashboard/Index.

2018 and 2021, there were "an additional 9,593 reported disappearances." *Id.* These numbers "mak[e] Jalisco one of the most serious sites of enforced disappearances in [Mexico]." Relatedly, the United States Embassy and Consulates for Guadalajara specifically warns Americans of the risk of victims being kidnapped by individuals the victims met on dating apps. *See* Security Alert: Use Caution When Using Dating Apps, U.S. Embassy & Consulates in Mexico, https://mx.usembassy.gov/security-alert-use-caution-when-using-dating-apps/ (last accessed March 23, 2026).

All of these circumstances are mitigating in terms of Mr. Garcia-Espinoza's assault. Mr. Garcia-Espinoza was panicked, confused, and scared at the time of his arrest.  He wishes that he would have responded differently and acted more in line with his history and character.  He shouldn't have assaulted the officers and he takes full responsibility for his actions. He did not seek out violence. Additionally, he was non-violent once he was being transported and never posed any problems while at the Newaygo County jail. *See* ECF No. 42, Pages 5, 7, ¶¶ 7, 18.

Mr. Garcia-Espinoza's overall character also shows that his actions in this case were an anomaly based on the stressful circumstances of his arrest. Mr. Garcia-Espinoza has never been convicted of anything violent. *See* ECF No. 42, Pages 10-11, ¶¶ 61-62 (show criminal history limited to two traffic related offenses). Both Mr. Garcia-Espinoza's supervisor and co-worker had very positive things to say about Mr. Garcia-Espinoza's work ethic. *See* Attachment A at 1:40-

4:23; Attachment B at 2:35-3:50. And his co-worker said Mr. Garcia-Espinoza "was never violent." Attachment B at 3:33.

When Mr. Garcia-Espinoza returns to Mexico, Mr. Garcia-Espinoza has a lot of positive things going for him. First, he is a proud husband and father, where his wife and their three children all live in Mexico. *See* ECF No. 42, Page 12, ¶¶ 75, 77. Mr. Garcia-Espinoza indicated to defense counsel that when he talks to his daughters, he starts crying. He is used to always being available to his children, and understands that as a result of his actions, he is incarcerated and thus unable to fully be present with them or communicate with them nearly as much. Second, his parents and siblings all live in Mexico too. *See id.* ¶¶ 69-70, 73-74. Third, he plans to work with his dad in construction or in the fields, along with his brother.

Relatedly, Mr. Garcia-Espinoza's is closest to his brother, and being separated from him has been very difficult for Mr. Garcia-Espinoza. Mr. Garcia-Espinoza told defense counsel (and separately told the probation officer during the PSR interview) that ever since his brother was born, the two have always lived with each other—both in Mexico and the United States. *See id.* ¶ 73. They did everything together, such as going to the gym, eating at restaurants, and working together at the dairy farm. *Id.* Mr. Garcia-Espinoza's brother was recently deported, which caused Mr. Garcia-Espinoza great sadness. *Id.* Mr. Garcia-Espinoza misses him dearly and is excited to go back to Mexico to be reunited.

Overall, Mr. Garcia's acceptance of responsibility, his unique perspective of watching and knowing about kidnappings, his positive work ethic, his lack of any serious criminal history, and his positive traits all support a downward variance.

## Conclusion

For these reasons, Mr. Garcia-Espinoza respectfully asks for a below-guideline range sentence.

Respectfully submitted,

SEAN R. TILTON
Federal Public Defender

Dated: March 30, 2026        /s/ Marcus Miller
MARCUS MILLER
Assistant Federal Public Defender
50 Louis, NW, Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420

8